Good morning, Your Honors, and may it please the Court, my name is Dennis Benjamin. I'm here today representing Bruce Minter. I'd like to address three issues that I raised in my brief. First, the issue on the motion for a new trial. Secondly, the sentencing issue, and lastly, the restitution issue. I'll address them in that order with your permission. First, as to the motion for a new trial, the Court knows that Mr. Minter, of course, was convicted of counts eight and nine, which were the bankruptcy fraud cases involving a petition filed on December 3, 1997, six years ago today, actually. Count seven involved an alleged wire fraud, with the wire transfer occurring approximately four months after the bankruptcy filing on April 14, 1998. The wire transfer itself was between Seattle and Houston, Texas. The government alleged in its wire fraud count two acts in two omissions, which constituted a scheme or artifice to defraud. The two acts that they alleged both occurred in the Western District of Washington, and the two omissions, of course, didn't occur anywhere because they were omissions. So what was the wire transfer with regard to? What was the transaction that encompassed this wire transfer? The wire transfer was money from an investor in a water treatment facility, a fort. The effluent treatment, right? The effluent treatment. And that was an asset or an activity that he commenced after he filed bankruptcy? Yes. And the money would go into his enterprise? Into the enterprise in Texas, which he was a partner of, or involved with. Yeah, and he had an interest in that? Yes, he did. Concealed asset in the bankruptcy? Well, it wasn't an asset at the time, because the bankruptcy was filed prior to the... Yeah, but it was an after petition, acquired interest, and it was concealed. There was no amendment to the schedule, right? That's true. Okay. Yeah, that's true. So the evidence, though, all shows that the venue for that was properly in the Western District of Washington. And the judge so said. Yes. It was dismissed. Okay. But the problem arises, Your Honor, is that when, by the time the judge dismisses it, all the evidence in support of that count has already been given to the jury. It didn't come anyway, because it was a concealed asset that was acquired after the bankruptcy was filed, and no petition was amended to show on the schedule that he had a new asset. But only as to that one particular fact. But that's not the entirety of the evidence as to Count 7. Wasn't there a limiting instruction given? No, Your Honor. The exact opposite occurred. The judge said, I have dismissed this count. You can consider, you may consider the evidence. But he said you must not exclude it, only for certain purposes, right? No, I don't think that there was a limitation, Your Honor. You have the exact language? I thought I read it differently. I think that I do. Well, I don't want to tie up the hearing with that, but I thought I'd maybe oppose it. I thought I had quoted it in my opening brief, Your Honor. My question regarding that, though, is whether there was prejudice. The jury seems to have done a pretty good job of separating out different counts and making an individualized decision with respect to each count and the evidence on each count. So talk to me about why you think there was prejudice. Well, I think there's prejudice for these reasons. The evidence was not, the evidence that was admitted as to Count 7, the fraud and the misstatements of fact by Mr. Minter and that sort of thing, weren't prejudicial to the counts that he was acquitted on. Now, he was acquitted on receiving stolen money. That was Count 2, I believe. But the defense in that case was that there was this big group of money, and you couldn't tie the money that Mr. Minter got to the particular money which was alleged to be stolen. So that the evidence, this bad act evidence of fraudulent intent wasn't an issue in that count. And then the other counts he was acquitted of by the jury were the perjury counts in front of the FAA. Now, the defenses in those cases were, one, I didn't lie, and two, it wasn't materiality. So, again, there was no issue as to prejudicial intent. And that's what all this other evidence that came in went to. I had 11 examples. The failure to tell Ms. Fork that he was in bankruptcy. The failure to tell her that the airplane had been in a forced landing and had crashed. The failure to tell the appraiser that he'd been in a forced landing. Evidence that Mr. Minter's son lied to the appraiser, saying that this airplane had special features on it, which would have resulted in a higher appraisal. Evidence about the cloud on the title. When he gave the title, there was a cloud on the FAA title. Now, he had, I thought, defended in part on the ground that he didn't own the airplane. Is that a correct understanding? There was some argument made that WAC, the Western Air Couriers, owned the asset. So, that portion of the evidence that was relevant to demonstrating ownership of the aircraft would have come in anyway. Well, yes and no. I mean, there would have been evidence that Mr. Minter at one time tried to pass title. I think that's probably admissible. What's not admissible is this evidence of the cloud on the title, which, excuse me, I'm sorry. Stop there just a minute, because you got me off in a different world here. As I understand his defense, defense was, I'm trying to stop a foreclosure on my house. I never intended to file anything else. All I wanted to do was play this game, file a Chapter 13, stop the foreclosure. I don't care about creditors. I don't care about debtors. He tried to dismiss all these things, the fraud, i.e., concealment of assets and debts, by saying, oh, I'm just trying to stop foreclosure. So, everything comes in relative to why he might have not revealed concealed assets. Isn't that all relevant against that defense? All I'm trying to do is stop foreclosure. It's not relevant against that defense. Second, his defense, am I correct in what his defense was? Yes, his defense was no intent to defraud. Why isn't this relevant, all this information about concealed assets, what he told people? Because, Your Honor, the fact that there's a cloud on a title doesn't prove whether or not he had an intent to defraud previous to. It's not relevant to that. What's the element of defrauding through the bankruptcy? The element of defrauding is the intent to take something from one of the creditors. And that's by not listing assets and not listing debtors. Yes, but we're not talking about evidence about that. We're talking about evidence about lying to appraisers, saying that your airplane is worth more than it is, so you can get a loan against it. That's not evidence of a concealed asset. That's other bad-ass evidence. Your Honors, if I may now, I'd like to jump to the restitution issue, and then I'll return to the sentencing issue, if I have enough time. I think that the Court erred in this case by imposing the $193,000 in restitution, because the people who the restitution was awarded to aren't victims, as defined under the restitution statute. Now, Wells and Urban were creditors, right? Yes. I mean, he owed them money before this bankruptcy thing ever came up, right? That's correct. So your theory is that the fraudulent bankruptcy attempt didn't really make any difference. They have – he owes them money, and he still owes them money, and is it lack of nexus? Is that the issue? On the restitution, there has to be a direct and causal connection between the loss and the offense. Now, the – So the loss here is because he doesn't have money to pay them with, rather than because of the crime. Is that – Right, Your Honor. The loss is due to some other acts, not because of the omission of the debts, which is the crime. So – That makes the bankruptcy totally irrelevant in all worlds. Why – if you have creditors and you don't list them, you're saying that the bankruptcy is irrelevant to them and those acts are irrelevant to them, when, in fact, the bankruptcy is supposed to bring in the creditors so that everybody can get a fair shake. You're saying that's totally irrelevant. Your Honor, they're not victims because the loss did not occur from the omission of the debts. The only – I'm sorry. They don't – but the criminal act is the defrauded bankruptcy actions. And they're part of the defrauded bankruptcy actions because they're creditors that weren't listed. But the measure of loss is not the full amount of the previous debt. The measure of loss – That's a different issue. Well, may I go to that issue? Because that's another issue that I raise in my brief. Because the question is whether you get in at all as a victim. Yeah. And then the amount of loss is a different issue. Well, I don't concede that they're not victims. I don't think they are. But let me address the issue of measure of loss because I think that's important as well. The measure of loss is not the total amount of the debt because Mr. Minter did not have sufficient assets, even if he had put all of his assets in and given all of his debts, he did not have sufficient assets to cover the total amount of the debt. So – There's another way to look at it, too, and I don't know how one would do this. If – assuming the facts as the jury found them, if he had succeeded in fraudulently obtaining a discharge in bankruptcy, he would still have been required to pay something to each creditor, 10 cents on the dollar or something. So how do we figure out what that might have been and is that the right way to look at it? In other words, if he had $100,000 in debt but he would have had to pay $10,000, is the amount of loss $90,000 that he intended to wash away $90,000 of his debts and not the full $100,000? But if that is the case, how do we figure out how much on the dollar he would have had to pay if he had gone through with the fraudulent bankruptcy? Do you understand my question? I do, and I have two answers. One, I think that the actual amount of loss is zero because if he had listed all these people, the debts and the assets, then he would not have been eligible for Chapter 13. They would have kicked him out of Chapter 13 and they would have converted it to a Chapter 7. Stay with my hypothetical, though, because the question is the intended loss, not the actual loss. So if he intended, we have to assume that he intended to get away with it, that he intended to have this discharge in bankruptcy. How do we figure out what that proportion would be? Do we look at his assets and his debts as we now know them to be and then figure out the amount that he would have had to pay and the remainder is the intended loss? For purposes of restitution, it is actual loss. I'm not asking about restitution. Okay, I'm sorry. I'm asking about the amount of loss for sentencing. Okay, I'm sorry. That's where I was confused. I'm sorry, too. I'm going to make that clear. The intended loss for purposes of sentencing has to go to what the people would have lost had the discharge, well, if Mr. Minter had done everything legal, had listed all the debts and all the assets, what would these victims have recovered? Is that your theory or do you have legal authority to base that? Well, the only legal authority that I have is a supplemental authority that was cited by the government, which is this Third Circuit case, I mean, Seventh Circuit case called Feldman, and that's what they went to. You know, we have, before there's any intended loss, we have to assume that Mr. Minter intended to discharge, which I don't concede. But assuming that he did intend to discharge, the measure of intended loss could only be what he would have gained by going through the bankruptcy. In Feldman, I don't recall the facts of Feldman. In Feldman, were the creditor's claims totally excluded in the bankruptcy on the schedules? In Feldman is a failure to list assets case. And the assets are maybe five or six times higher than the amount of debts. He listed all of his credit card debts. And in that case, the Third Circuit said, since there were assets to cover everything in the case, we're going to assume that he intended to defraud that entire amount. In this case, of course, there were not assets to cover everything, not by a long shot, even if we were to assume that everything could have been sold at face value and there were no transactional costs. I'm going to finish now, Your Honor, because I'm out of time. But the short answer to your question is that we have to remand for further evidentiary development. Thank you. And we asked a lot of questions, so we'll give you some time for rebuttal. Thank you, Your Honor. Miller. Excuse me. Good morning, Your Honors. May it please the Court, I'm Celeste Miller, arguing today on behalf of the United States. And, of course, now I'm changing the order of my whole plan. I would appreciate starting with the back end, because I frankly, just again, only for myself, I find the sentencing and restitution issues to be the most difficult for me in the case. How do we measure the loss for sentencing purposes? We have to assume that he intended to go through with the bankruptcy and then receive a discharge. But had he done so, presumably even under his scheme, he would have had to pay something to the listed creditors. So how do we figure out what amount they would have lost, what he intended to wash away? Well, I think that I read Feldman differently than my colleague, particularly the very last paragraph, which addresses this issue. And specifically, the court there held, the Third Circuit held, that you have to look at the amount of debt that the debtor was seeking to discharge. And if you look at it from that standpoint, I think that you get the best measure of loss. That doesn't make sense to me, conceptually. Because, excuse my same hypothetical, you have $100,000 worth of debt, and you lie and say you only have $10,000 in assets. And if you'd gone through with it, you still would have had to pay $0.10 on the dollar to those creditors. So the intended loss is only that $90,000, not the full $100,000. Because even under your scheme, you're intending to pay a little bit to those creditors. But if you are also concealing all of your non-exempt assets, you're attempting to have it all. You want to keep all your stuff and discharge all your debt. So that's your fraudulent intent. I'm not quarreling about the fraudulent intent. That's not my point at all. But under the scheme, as the defendant has devised it, he will still pay a little bit to his creditors by giving just a little bit of his assets. And so he's intending for them to lose, in my example, only 90 percent of the total. Why isn't that the proper measure of the loss, the intended loss? Well, part of the confusion that exists here is that he was in a Chapter 13, and he was proposing plan payments in the Chapter 13 that equaled strictly the amount of his monthly mortgage payment. He proposed, and he intended to pay nothing to the other unsecured creditors who he did include in the schedules. And then if you follow the Feldman formula for restitution, it relates back to the loss, where you have to look at the position the victims would have been in if the defendant had acted lawfully. What would have happened? He would have disclosed debt far in excess of the eligibility ceiling in a Chapter 13, which would have shunted him into a Chapter 7. And he would have disclosed non-exempt assets, stock, stock options, profit sharing, auto parts, airplane, his interest in Western Air couriers. He would have disclosed those assets that would have been available to creditors, the unsecured creditors who were listed. And they could have participated in a distribution of those assets. But the two creditors who he omitted could have had, this is the main part of the bankruptcy process, they were denied. They would have had the opportunity in that Chapter 7 to have challenged dischargeability of their debts because of fraud. He incurred those obligations in a gap period between two fraudulent bankruptcy proceedings. Now, here's my problem with the restitution, and maybe you can help me sort this out as well. Because the scheme never was fulfilled and there was no discharge in bankruptcy, any losses that those individuals suffered had to do with something other than a fraudulent bankruptcy, didn't they? They were preexisting debts. He didn't have the money to pay them or he chose not to pay them. But I don't see why their loss actually results from his attempt to get a discharge that he never got. Here's how that, here's the logic that you follow to get there, Your Honor. Those debts were incurred shortly after his first bankruptcy in 1997 was dismissed, October 6th of 1997. Then he used the girlfriend's money, fraudulently obtained, to purchase, to start up Western Air Couriers and purchase the assets of Pegasus Air, and affected that transaction by which he undertook some $260,000 of personal obligation to the sellers. And that transaction closed on October 27th. And then on December 3rd, he files Chapter 13 again. Those two creditors had the, they were deprived of the opportunity right off the bat in December of 1997. Within eight weeks of them having lost their money to him, essentially, they lost the opportunity to have sought and fought to have those debts declared non-dischargeable. I understand that, but they were never discharged. Yes, they were. He discharged them in his Chapter 7 proceeding in 1999. He obtained an order of discharge, which is in the record, and we proved at trial the order of discharge that he obtained in his Chapter 7. So as they stand today, those debts are discharged. And if this restitution ---- I thought that order had been essentially rescinded, but that's an incorrect understanding of the record then? Right. The Chapter 13 proceeding, the charged bankruptcy proceeding, converted to a Chapter 11, and then he simply dismissed that case. So a discharge did not occur in the charged bankruptcy proceeding. But the following year in 1999, he filed a Chapter 7, and that was where he disclosed the second conveyance of the airplane to a second individual that and in that bankruptcy, he obtained an order of discharge. So that an order of restitution in this case essentially gives those two creditors, those two victims of Count 9, it restores them to a status of having non-dischargeable enforceable obligations against Mr. Minter. And that's what they have lost. And that is why ---- They lost it not in this charged act, but in a different act. But they lost it because he fraudulently omitted them from this bankruptcy where they could have asserted their rights and they could have proven the fraudulent inducement that generated those obligations. I see. I see what you're arguing. And that's why that is an actual loss to them, having left them off the schedules and depriving them of their rights in that Chapter 13 proceeding. So that if you look at what their status would have been had he acted lawfully, then you get to a determination of actual loss for restitution purposes and I think also intended loss for guideline calculation purposes. I follow you, and I want to follow up on that because I've been listening intently because you pushed me exactly where I am trying to sort out. If Mr. Minter followed ordinary Chapter 13, Chapter 11, Chapter 7 procedures, we could think bankruptcy. But we don't think bankruptcy, do we? Because this is a fraud case. He made up his own rules and his own thing in his own time by fraud. So once he filed a 13, it's no longer a 13, it's a fraud. Right. And what you're saying is those fraud actions then produce different results than you would in determining a claim through bankruptcy. We're not trying to value the claim. We're trying to figure out what you lost by his fraud that occurred because he used bankruptcy as a fraud, not as a tool to relieve his debts. Is that what you're trying to say? I think you put it exactly correctly. Because if not, if we get in the bankruptcy mode, then we start valuing what's the value of the claim, you know, was there this and that. It starts out with a fraud. That's what he was charged with, with a fraud. It's a crime. And if you can get to the Victims Act, then you decide what did they lose. They lost the value of their claim. Exactly. Because in the 7, if we go your route, in the 7 they could have also raised the fraud and sought not to be discharged. But I don't know what they did or they didn't. So I'm not too sure that the 7 has anything to do with this. Well, except that it does leave them in a status of having their debts discharged. Well, they could have raised the defense then. They could have. I would argue that there was a huge sea change in their personal circumstances between December of 1997 when he filed this bankruptcy, which was within weeks of incurring those obligations, and when he filed a Chapter 7 in July of 1999 in terms of all of the changes in all of the people's lives. Yes, and I think that you're In any event, this man, from what I can tell your theory is, and what I was reading in the record, as he progressed along, he used Chapter 13 as a device. Yes. Because as you've shown, and as the pleadings have shown, I think counsel will admit, if you get to the real picture, you can't use 13 because of the debt structure and the concealed asset structure. Right. So all we have here is 13 being a tool for a fraud, and we analyze that under a crime mode. Right. So the restitution fits. Yes. I understand. I understand. I'll rework that. Okay. Okay. I've lost track of where I am on time. About four minutes left. Okay. Let me – I would make a couple of points about the intent issue because I think that it's somewhat of an underpinning of other issues addressed in the appeal. And first, let me say that the claim of the defendant that the government somehow failed to disprove his lack of intent to seek a discharge is an argument that is unsupported in the record. It is an entire construct by counsel. And if you look to the testimony of the bankruptcy attorney at trial, when he is asked by defense counsel, isn't it true that Mr. Minter never sought to obtain a discharge in this case, the attorney's response was, I can't say that. He just flat couldn't go that far to say that he knew that Mr. Minter never intended to seek a discharge. This was a – this has been a theme throughout all of the pretrial and trial motions and post-trial and sentencing and yet again on this appeal. And again, I would refer you to Feldman, which held in an analogous factual scenario that it is not the government's burden to disprove this claim of his that, you know, he harbored this secret in his mind that he was never going to get a discharge. We have only heard that from counsel, and we never heard it from any witness or any evidence in the record in this case. But his defense in the criminal trial on the fraudulent bankruptcy charge was, I was only using this so I could stop a foreclosure on my house. Well, that's his attorney's argument. Yes. But there's no evidence to support that argument. That's one of the points I'm making. Only to that effect, it was just the argument of counsel. That's all I'm trying to do. Correct. Correct. And there was a foreclosure and there was, you know, a bankruptcy petition filed two different times. There's no doubt he was trying to restructure that debt on the house. No, there's no doubt about that. But that is a separate issue from did that mean that over he proposed a five-year plan, he proposed a wage earner plan, and he made a couple of plan payments along the way. He did all the steps that you do in a Chapter 13 where eventually you end up with a discharge. I will argue that. I mean, if the major issue was that this mortgage, it was gone for, what, two or three years, whatever, and he proposes to restructure the mortgage and he doesn't have anything else in the bankruptcy, can't you argue that's what he was trying to do? Whether he can do that or not. Right. Well, he can argue it. But my only point is there's really no evidence to support that argument. And, you know, if that was the case, why would he include any other assets on his schedules? Or why would he include any other debts? He included $80,000 worth of debts to other unsecured creditors. That goes to my second part. That goes to the count number seven issue. Those acts that he committed in this fraud scenario in not disclosing assets, not disclosing indebtedness creditors, those acts are evidence that he was trying to do something with the 13 other than the regular 13. Is that your argument? And that's why including those acts of the dismissal on the seven are not prejudicial. Is that your argument? My argument is that he was using the Chapter 13 as, you know, his own little universe. But then the dismiss venue case. Oh, okay. Oh, the spillover. The legal wire funds. Right. Those acts are still relating to assets and creditors within the bankruptcy, which constituted the fraud. Absolutely. I mean, every single example that counsel used in his brief was either addressed by the district court or I can address those now. But, for instance, the clout on the title of the airplane, which resulted because he conveyed it to two different people without telling either of them he had conveyed it to someone else. So that was a clout of his making. But as Judge VanSickle found, that evidence was needed to prove he owned the airplane because, you know, he fudged a little on one of those titles. He put the word prez in paren after his signature. And he tried a defense for a while that he didn't own the airplane and that his son owned the airplane and that a corporation owned the airplane. And so we had to put in all this title evidence of the clout on title to show he did own it. But concealed assets. Yes. He concealed it. He owned it. He had it appraised. He had had a forced landing in it. And he told that to some people when he wanted to devalue it in the bankruptcy. And he didn't tell it to the other person when he wanted to puff up its value to use it as collateral for the investment of Neal Fort. And his playing both sides, talking out of both sides of his mouth, depending on who he was talking to, was further evidence of his intent to deceive or cheat that we have been held to our burden of proving throughout this case. And I think that we met it, particularly if you draw inferences from his course of conduct that his intent all along was to defraud his creditors, the court, his own lawyer, his family, everyone he knew. Thank you, counsel. You have exceeded your time. Sorry. And we picked up a lot of your time with questions. So we'll give you a couple of minutes for rebuttal. Thank you, Your Honor. I think I'll only need a minute or two. First, Judge Brunetti, to answer your question about the instruction at the end of when the judge dismissed count 7, I quoted in full at page 22 of my brief. He says, The evidence presented would be appropriately considered by you concerning the remaining allegations before the court and you, ladies and gentlemen, as a jury. So he affirmatively says you can consider the evidence in count 7. I'd like to turn to the restitution and finish up on that, if I might. I think the starting point from this Court's analysis has to be from the District Court's analysis, where he found that there was no actual loss as part of the amount of loss for sentencing purposes. He says Mr. Minter is right. There is no actual loss, but I'm going to sentence him on intended loss. So there is a finding that there was no actual loss as a result of the bankruptcy fraud. Secondly, we know that Mr. Minter's omissions of the debts in bankruptcy were not the direct and proximate cause of the debts themselves. So that cannot be a basis for imposing restitution because the debts were pre-existing the fraud. Thirdly, the offense ends, the December 3rd bankruptcy petition is the charged offense. That offense ends when he dismisses what has been converted into a Chapter 11 in October 27th, I believe, of the following year, 1998. So at that point, the fraud ends. The fraud is over. And that's the point at which we look to see if any losses occurred. Let's assume that the losses are caused by later related fraudulent conduct. Is it your position that the statute doesn't permit restitution for similar related conduct that isn't the charged crime? By statute, it has to be the offense of conviction. If Mr. Minter later in a Chapter 7 perfectly legally, by all accounts, discharged these debts, that is not an actionable act for restitution. It has to be the fraud which ended in October. If he had properly listed these creditors in this proceeding, and if they had been able to get an order saying that the debts were not discharged, then it would have prevented the later acts of discharge. Do you agree with that construct or not? I think that shows a possibility of, it shows a possibility that they could have avoided loss. Here's what I think is more realistic. Everything, Mr. Minter does everything as he's supposed to do. Everyone looks at the petition and says, this isn't a Chapter 13 petition. This is a Chapter 7 petition. So we, Mr. Minter either dismisses the petition like he did the Chapter 11 petition, in which there would be no harm, there would be no loss, or they proceed in a Chapter 7 petition, which is what he did subsequently and received a full discharge, in which case there was no loss. So my position is, since the fraud ends in October without any loss, the loss either occurs prior by the fraudulent acts that have nothing to do with the bankruptcy, or in a perfectly legal bankruptcy proceeding, there can't be any restitution. Thank you. Thank you. The case just argued is submitted, and we'll turn to our last case on the morning calendar, Silvernail v. Armstrong. We have one counsel appearing telephonically. Do we have him on the phone? All right. We'll do that. We'll take a short recess and return then for the final case. All rise.
judges: Brunetti, T.G. Nelson, Graber